Good morning. Thank you, Your Honors, and may it please the Court. This case concerns the documentation required to obtain a refund of unconstitutionally assessed harbor maintenance taxes. In Chrysler v. United States, this Court agreed with the government that an exporter seeking a refund must submit documentation in support of that refund request, and so rejected a claim for a refund that was unaccompanied by any documentation. In this case, Ford submitted substantial documentation in support of its refund claim, including copies of the very documents specified in Customs' own refund regulation. The Court of International Trade nevertheless rejected Ford's submission, found it inadequate, and so inadequate that it did not even create a triable issue of fact. In our view, the Court of International Trade's decision upsets the balance struck by Customs' refund regulation, imposes an unreasonable and unmeetable burden on exporters seeking to obtain refunds for unconstitutionally assessed taxes and should be set aside by this Court. There are two time periods at issue in this after July 1, 1990. Can I focus on the post-1990s first? Yes. I don't want to disrupt the order of your argument, but that's, I think, what you did ultimately in your brief. So, with respect to the post-1990 payments, the government argued that the sheets that you did submit, or at least the first nine, don't match their records. And for post-1990, there are records. So, what other documentation could Ford have provided or information that Ford could have provided to establish that those sheets were actually submitted? Well, I think that's the problem for the exporter. First, you're right that the government claims that it doesn't have records of those payments having been made. The government has also admitted, fact 99 of Ford's 56th statement, that there were numerous errors in the government's HMT database with respect to post-1990 payments. And that's true for the pre-1990 payments as well, where the government doesn't have any documentation. And so, Customs came up with a regulation that specified the kinds of documents that it would accept as proof of payments. And one of those documents is the Export Maintenance Vessel Summary Sheet, or Export Sheet, of the type that Ford submitted here. But would Ford also, I mean, say, hypothetically, that we don't agree that all you need is that sheet? Or that we don't agree that just the sheets are enough for judgment as a matter of law? So, what else? I mean, does Ford have canceled checks to show that checks were sent that would match up to these vessel sheets? Ford does not, Your Honor. Ford has copies of the signed, dated, and sworn export sheets in its files. It does not have anything else. Now, I think the regulation obviously contemplates different types of documentation, and does mention in the other documentation category, canceled checks. Ford does not have those. It submitted what I think the regulation identifies as an appropriate proof of payment, the export sheets. Now, the government's central position here, or the Court of International Trade's position, was that Ford had to show that those And we think that that imposes a burden that wasn't intended by the regulation. Suppose you're right about that. You would agree, I assume, that you would at least have to show that they were submitted. Yes. And so far as we have to show that these were authentic copies of the documents that accompanied the payments. The way the payments are made, you submitted them to the bank. The bank then transmitted them to customs. Is that my correct memory? That's right. So you agree that you at least had to show that you submitted them to the bank. That these were authentic copies and not reconstructed. That's not answering my question. Do you agree? The answer is yes. Okay. So why does the fact that there are documents in the file show that they were submitted to the bank? It seems to me there's a gap there that could have been filled by an affidavit saying, you know, the way we keep our records is we submit it to the bank then we put it in the file. The fact that it's in the file shows that it was submitted to the bank. We don't have any declaration or affidavit like that, right? Well, we do have affidavits saying that Ford acted with great care and consistency in making its HMT payments. And I don't think that that's been disputed by the government. But that may be. But the fact that it's in the file doesn't show, it seems to me, that it was submitted. And that you, unlike the difficulty of presenting evidence that it was accepted, and I understand the difficulty there, it does seem to me that it was within your power to submit evidence that these particular documents were submitted or that there was a course of action to submit documents like that. And I think that in a minimum, I think even if Ford could have done more, I mean, I think our position is that what's in the record at least creates a reasonable inference that these were the documents that were sent for this reason. First of all, there would have been no reason for Ford to create these documents except to submit them with the payments. Well, perhaps so. But everybody recognizes there can be glitches here. It may be that the documents were prepared and somebody slipped up and didn't submit them. And what's missing, and I would have thought was readily available to you, was an affidavit from somebody who was involved in the process who would say the fact that these are our files shows that they were submitted because they wouldn't have been in our files if they hadn't been submitted. But you didn't do that. That's the problem. Well, Your Honor, I think you're right. We don't have a separate affidavit saying that these export sheets were actually sent. We did allege in our complaint that they were sent along with the payments. That's paragraph 58 of the complaint. We did provide documentation including the Vanderbilt and Steck declarations that opined as to the quality and care and consistency of Ford's process here. That's not disputed as to the government. And I think what the government is asking here, we think, is an unreasonable burden of the additional level of what's required to show acceptance for this reason. You may be right about the acceptance point, but that's different from saying that you need to show that they were submitted, which you agree is required. Well, that's true, Your Honor. That's true. But as to the submission, I think what we have, again, what we have here are copies of documents that by all accounts are authentic. What we have, secondly, there would have been no reason for Ford to create these and not submit them. Even if you thought it was possible that they didn't submit one of these forms, it's entirely unrealistic to think that they didn't submit all 20 of these forms given the consistency of Ford's practice. Doesn't the government, in its capacity of protecting the FISC, have a right to insist that the evidence, at least established in some reasonable way, that there is a right for this refund? And isn't that all they're doing? Well, they do have, of course they have that right, Your Honor. I think that they've struck a compromise in the refund regulation, recognizing that this is an area where, one, we have acknowledged unconstitutional taxes, and two, we have acknowledged problems with the government's own records, both as to the pre- and post-1990 periods. And so they came up with a regulation that sought to strike that balance, which would be different than in another context where the government would reasonably require more proof. And in the regulation, they specified as a proof of payment the very type of export sheet here. They also said in the comments accompanying the regulation that this regulation was not imposing additional burdens on exporters. That was at page 31950 of the Federal Register 67. Customs has never imposed the type of acceptance requirement that the Court of International Trade has found here. They've never, as far as we know, have imposed the type of heightened proof of transmission in this context for refunds. I think in other contexts, Your Honor, courts have recognized the minimum reasonable inferences from the fact that records were in files, that CCs were on letters, and here you have the documents that specifically state, send to U.S. Customs. We don't have a certified mail receipt. We don't have a declaration that I'm, you know, I would think that we would at least attempt to submit if Your Honors held that this was the burden. The Court of International Trade found that our submission was inadequate because it didn't meet the level of acceptance. If this Court concluded that that acceptance requirement wasn't required, and we think it's not because among other things, Customs didn't accept or reject these documents. They went straight to a bank lockbox and then were simply forwarded to Customs later. But if the Court found that that acceptance requirement wasn't required, then we would think that we would ask the Court to, one, at least find that the record creates a reasonable inference precluding summary judgment for the government here that these documents were transmitted, and let Ford try to make that proof at trial, or two, remand for consideration of whether Ford might present additional evidence as to the requirement as explicated by this Court on transmission. That point, the fact that this is a strange procedural posture, that's one of the things that's bothering me here is it seems that both sides are really arguing that there's a material issue of facture. I mean, the government says they've rebutted your submission of these, or at least they think they've raised an inference that you didn't submit these forms. You say that the fact that the forms are signed and dated and you have a business practice affidavit is enough. Why isn't that simply a material issue of fact rather than both of you seeking summary judgment on it? Well, Your Honor, we've argued that the regulation, when it refers to a copy, we've submitted the copy, we've met that, and so we're therefore entitled to the refund as the regulation says. But if this Court disagrees with that, then I think you're absolutely right. There's a material issue of fact here. There should be, both sides should have an opportunity to present additional facts on whether these forms were submitted, including testimony of the like that Judge Dyke referred to from Ford personnel who might be available or might not be available, because this is going back now more than a decade, and have a fact finding on whether or not... Because your blue brief implies that once you submit that form, the government doesn't even have the right to rebut it. That was our frontline position, Your Honor, but certainly we also opposed summary judgment for the government on this, and so we would think that the Court disagreed with our frontline position. We would ask you to find that there's a material issue of fact here, and we do think that the forms that are submitted here and the copies in the record at least create a consistency in care of Ford's practice here, that these forms were authentic, that they were sent, and there should be a trial on this. The government hasn't identified any reason why one would believe that these forms in Ford's records were not actually sent. Well, except that they don't have a record of receiving them. They don't have a record of receiving them, Your Honor, but again, the government has And we know it's accepted because it's on page 30 of the government's response to that statement, that there were, quote, numerous errors, end quote, in Customs HMT database with respect to the 1990 period, which would explain why Ford submitted these payments, but the government nevertheless doesn't have a record of the payments. And I think where Customs has acknowledged that, and yet failed to come up with any reason why it's reasonable to think that Ford didn't send these payments, when the only reason to create these documents were to send the documents as Ford was required to do by law, I think at a minimum we've created a reasonable issue, a fact issue, that warrants further proceedings. Would you... Okay. Do you have another question? No, I was going to ask him to move to the pre-1990, but if you have something on this part. No, that's all right. He's into his rebuttal period, but if you want to take a minute to go into that, that's fine. I just have one question about the pre-1990. Are you saying that because the database is produced via a FOIA request, that somehow it's less flawed than as it was in Chrysler? No, I think that the database shows that Ford did everything, that the FOIA request shows that Ford did everything possible to try to gather information from the government. I think on the pre-1990 documents, what I would say is the strongest point for Ford is that we submitted declarations showing that Ford's payments were made with great care and consistency. These were unrebutted points, and so this addresses one of the two problems that led to the flaws in the database, the errors on this point. One flaw was flaws by the exporters themselves in terms of the data that was submitted, and the other flaw was flaws in terms of what was transmitted from the bank to customs. Ford's evidence shows that in this case, there's no reason to believe that the first flaw existed, i.e. Where is the statement that the problem with the database at issue in Chrysler was a problem of recording by Ford or the exporters? It's in the Thompson Declaration, Your Honor, which is attached. It's in the joint appendix where they explain that there were two problems that led to Who was Thompson? Thompson was the Rule 30B witness for the government who explained that the And he and she and her affidavit, where does she explain that one of the problems was the accuracy of the Ford data? The accuracy of the data by the exporters, Your Honor. I don't have those sites here. I will in my rebuttal. Thank you very much. We'll restore your rebuttal. Ms. Hogan? Good morning. Good morning, Your Honor. May it please the Court. The trial court correctly held that Ford was not entitled to any additional refunds of harbor maintenance tax because it failed to either meet the requirements of customs regulations or create a genuine issue of material fact for trial. It seems to me that there are two ways of reading this regulation. One is that it requires that the exporters show that the data or the documents were submitted. The other is that documents were accepted by customs. And I'm having trouble getting that latter interpretation out of the face of the regulation. Well, I think there's two ways to look at the issue, and we're discussing the post-1990 issue. When a claimant is seeking a refund, most of the time the issue was, was this payment made for export or was this payment made for some other type of constitutionally collected tax? And if you submitted your export vessel summary sheet, that would demonstrate that, in fact, the payment was made for exports. That's a supporting documentation. That would get you a refund. But the predicate for any refund is that there was a payment made to customs because if there was never a payment made, customs isn't responsible for refunding any money. So with respect to these particular claims, what Ford did was say, here are some export vessel summary sheets. Customs looked through both its electronic database and its paper records for those time periods and was unable to identify. But what you're saying is that even if they had come up with these sheets in an affidavit, I personally delivered these to the bank at the time together with the checks. That wouldn't be sufficient because that wouldn't show that customs had accepted them. Am I understanding you correctly? That might have gotten Ford at least to a trial, although I think Ford would still have the issue of demonstrating that there was a payment for which it's entitled to a refund. So where do I get from the language of the regulation that it had to be accepted as opposed to submitted? Well, in Subsection C, the supporting documentation that CBP will accept is whichever of the following documents CBP accepted with the payment at the time it was made. But that's ambiguous because that could mean the type of documents that were accepted or it could mean that the individual document had to be accepted. So isn't there at least an ambiguity as to whether the actual document had to be accepted? I think to the extent that there's an ambiguity, it's answered by the purpose of the refund regulation, which is refunding. To make it easier for people to submit the information and get their refunds, right? Well, customs expanded the types of documentation that it would accept in an effort to assist the exporters. But the bottom line is that there has to be proof of a payment and there has to be proof of that payment. But isn't it meaningful that they equated these sheets with canceled checks in the regulation? So it seems to say that the regulation believes that the submission of these documents is sufficient to establish payment. It's sufficient to establish a payment for export HMT. But what we don't have here is any evidence that there were payments made to customs in the amount that Ford saw here. And what customs did was provide a declaration from one of its employees that it searched both the paper documentation and electronic data. Which you admit have errors. So why doesn't that at best raise a genuine issue of fact as opposed to establish that the customs is entitled to summary judgment in this case? We certainly do not contend that there's anything wrong with the paper documentation that customs possesses. And post-July 1, 1990, customs still retains the documentation. So it was able to search the paper documentation. Are you saying there are no errors or mistakes or anything missing from the paper documentation post-1990? I'm certainly not going to make that. Despite the odd system that was put in place?  But the concern that customs had in relying upon its electronic database was that it did not accurately reflect what actually happened with paper. And those were as a result of various types of errors, both from the claimants submitting erroneous information as well as the data entry from the bank personnel. Where customs has the original paper documentation, either because it retained it itself or because a claimant provided it at the time the refund request was made, customs was able to reconcile the electronic database with the paper documentation to ensure that what was recorded in the electronic database was accurate. So for purposes of the post-July 1, 1990 claims here, the fact that there is no evidence in customs paper records of any payments or these sheets, these sheets are not found in customs. Only as to those nine? I'm only discussing the post-1990 ones. But even the CIT clearly said that the 20 were all in sight, but you haven't looked at the rest of them. Well, we have looked at the rest of them. We didn't submit an affidavit. Okay. And is there any evidence that payments were made with respect to the rest of them? No, Your Honor. What is this proposed finding or whatever it is, statement of undisputed facts number 99? I'm not sure what exactly is being referred to here. The fact that there are errors contained in the database, we did certainly have testimony from an employee who testified. Okay, but this post-1990 stuff is not a database issue. They seem to be contending that you admitted that there were errors in the documentation that customs retained in the post-1990 period. There certainly were errors made. However, those errors were able to be reconciled with the contemporaneous paper documentation. Which you still have. Which we still have. So the fact that customs put forth evidence saying, we've looked at these various things. We have no evidence that there was ever a payment received by us. And Ford did not present any evidence to the contrary, any accounting information that a payment was processed, any bank records, any canceled checks, any affidavits. So we have to assume that these are forged documents then. I mean, that's the position essentially the government is taking. Absolutely not, Your Honor. They could have mistakenly never been sent. They could have been included as a part of a larger agency payment that's already been refunded to Ford. Because Ford did receive refunds for the quarters at issue here. There are many possible, or at least a few possible explanations for why these might be somewhere in Ford's headquarters but never have made it to customs without assuming that there was any fraud or forgery here. We simply didn't get any evidence from Ford as the explanation of where these documents came from and anything else they might possess that might show that there in fact was a payment. And without that, the trial court probably found that there was no significant material issue of fact. But not for that reason. That's the problem. The trial court found that there was no material issue of fact because they didn't prove actual acceptance by customs. And I'm not quite sure what they could possibly submit to prove that. Well, again, I think to at least get to the stage of trial, Ford could have put forth bank evidence, a debit for the payment of HMT for that quarter. Could have put forth canceled checks. It could have put forth an affidavit saying we sent it in the mail and this is our email address. But again, those are more than the regulations call for. Now you're saying that they needed to do that because you rebutted their initial showing. That's very different from saying their initial showing was completely inadequate because it didn't contain all these other things. Well, we dispute that the initial showing of these export vessel summary sheets did meet the terms of the regulation because there was no showing that this was actually the documentation that was submitted to customs and accepted by customs with a payment at the time a payment was made. Is there an interpretation of this regulation by customs that says it requires proof of acceptance? I think that that's simply implicit in what the purpose of the regulation is. The answer is no. The answer is there's no explicit interpretation. We have to deal with the language and background. Yes, Your Honor. You want to turn to the pre-1990s? Yes, Your Honor, thank you. I don't have too much additional to say about the pre-1990 claims. Clearly, the reliance upon the spreadsheet that was given to Ford in response to a FOIA request, that's the exact same information that's contained in customs database, failed as a matter of law to meet the requirements of the regulation. And the declarations that were submitted at the time of the motion for summary judgment, at best, those declarations demonstrate that Ford filled out its forms correctly and that it tended to submit forms with its payments. However, that simply does not address whether what is actually recorded in customs database as exports versus non-exports is accurate. And particularly given that there was undisputed evidence that at least where we have actual paper records to verify, there were numerous errors attributed. What I understand them to be saying is, well, there were numerous errors. There were several, at least two sources of those errors. And we've at least shown you that one source of errors didn't exist with respect to our entries because we were careful and didn't make mistakes. In other words, it seems to me they agree that the bank might have made mistakes, customs might have made mistakes, but that they have put in evidence that they didn't make mistakes. Is that correct or not? That's certainly how I understand Ford's argument to be. The problem with that is that it really boils down to an argument that you should trust the database. And customs regulation clearly says it can't rely solely upon the database. But I think the question I'm asking is whether the lack of trustworthiness of the database in customs view at the time of adoption of this regulation was attributable to import or export errors or not. It was attributable to both errors made by payers and by the bank personnel in actually inputting the data when payments were received. So there were errors made on various fronts. So even the fact that if Ford submitted flawless payment records every time it made a claim, that still wouldn't demonstrate that what actually got put into the database accurately reflected that they were export payments and in the amounts that were sought. Unless the Court has any further questions, I would respectfully request that the Court affirm the judgment of the trial court. Thank you very much. Mr. Garth. Thank you, Your Honors. Judge Dyke, on the question of the errors resulting as to the pre-1990 data, the Chrysler decision 592F3rd 1332 to 1333 recognizes that the central sources of error were errors by the exporters going in and input errors by customs. The government recognizes this at page 23 of its brief, note 11, where it cites to page 271 of the JA, the Thompson Declaration on 65, page 65 of that declaration where she acknowledges those sources of error. So by taking out the exported errors, and Ford's data does that, and Thompson recognized that, and we spelled this out on page 34 of our brief. They've taken out one of the two central causes of the errors. We think that at least creates a tribal issue. Ford can't challenge the database because customs has no records underlying the database as to pre-1990. As to post-1990, finding 99 says this. But that puts you in the position of challenging the holder, holding a Chrysler that customs can adopt a regulation that this database is not sufficient. What you want us to do is to say, oh, well, the Chrysler decision just meant that it's a general rule and that you're allowed to rebut that in individual cases. What we would like for you to say is that Chrysler requires the exporter to come forward with documentation. The exporter in Chrysler had none. Here the exporters come forward with documentation establishing, and we think in an unrebutted way, that exporter error was not present here. So one of the two main sources is gone. We think that at least creates a tribal issue. As to paragraph 99, it states... Where are you reading from? I'm reading from the government's response to Ford's... What page in the appendix? It's not in the JA, Your Honor. It is in the record, and I apologize for that. We could submit copies of this to the court if you'd like. But it says, quote, customs conducted a review of all export-related HMT documentation in the post-July 1, 1990 period and found numerous errors. Response to statement... That's end quote. That was Ford's statement 99, and it's undisputed statement of facts. Response to statement of fact number 99, quote, defendant does not dispute this proposed finding, end quote. Well, but what the government is saying about that is that it's an error in the electronic database post-1990, but that when they reconcile it with the hard copy, which they still have, they're able to eliminate the possible error. And that's their argument. If they want to make that before the trier of the fact, then they could if the court finds a material issue. But I don't think that's sufficient to overcome their acknowledgment that there were errors post-1990. I don't think that they can say that because their records, which they admitted don't have errors, don't contain copies of these sheets, means that there's a sufficient basis to defeat Ford's claim that it submitted these copies in the first place. The government does not defend the Court of International Trade's requirement of an additional burden of showing acceptance, as I understood my friend here today. So at a minimum... No, I think they're still saying that. Well, then I misunderstood her. I mean, we would ask this court at a minimum to say that it doesn't have this heightened burden and to find that Ford's evidence was at least sufficient to create a tribal issue on that. This is not the typical situation where a party comes to the government and seeks a refund and has great burdens to show. Customs has acknowledged errors in its database. It's established that these were unconstitutional taxes. They created a refund regulation that sought to strike a balance that allowed exporters a reasonable way of providing proof of payment. Ford provided proof of payment in the very form that Customs regulation calls for, the export summary sheets. Ford provided substantial additional documentation as to the pre-1990 payments. If this documentation is enough, we would submit as a practical matter, it's never going to be enough, and that simply wasn't the intent of the regulation. Thank you. We have your argument. The case is submitted. Thank you, Your Honor.